**LAW OFFICES OF**
**BLAKE GOODMAN, PC**

Blake Goodman
Bar Number: 7436
900 Fort Street Mall, #910
Honolulu, HI 96813
E: blake@debtfreehawaii.com
T: (808) 828-4274

*Attorneys for Plaintiff*
*Aletha Kamakeeaina*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| ALETHA KAMAKEEAINA,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC and EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendants. | **Case No.: 1:26-cv-00330**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. § 1681, *et seq.*** |

Plaintiff Aletha Kamakeeaina ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* against Defendants Equifax Information Services, LLC ("Equifax") and Experian Information Solutions, Inc. ("Experian") (collectively, "Defendants').

## I. INTRODUCTION

1. Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., against Defendants, each a consumer reporting agency, for reporting inaccurate information on Plaintiff's consumer report. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2. Plaintiff's Complaint also alleges that Defendants violated 15 U.S.C. § 1681, *et seq.,* by failing to reasonably investigate Plaintiff's consumer disputes, which resulted in Defendants reporting inaccurate information about Plaintiff.

## II. JURISDICTION AND VENUE

1. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

2. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

3. Defendants transact business here; as such, personal jurisdiction is established.

## III. PARTIES

4. Plaintiff is a natural person residing in the city of Kapolei, Hawaii.

5. Plaintiff is a consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

6. Defendants Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendants is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

7. Defendants Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendants is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626. Experian can be served through its registered agent at CT Corporation System, 330 North Brand Boulevard, Glendale, CA 91203.

8. Upon information and belief, Defendants disburse consumer reports to third parties under contract for monetary compensation.

9. At all relevant times, Defendants acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

10. Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

## IV. FACTUAL BACKGROUND

11. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

12. The United States Congress decided that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

13. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

14. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right

to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

15. Defendants report consumer information about Plaintiff and other consumers through the sale of consumer reports.

16. Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

17. Defendants obtain consumer information from various sources, including furnishers that provide consumer information to the CRAs, and information the CRAs independently source themselves or through third party providers, vendors or repositories, including computerized reporting services like PACER.

18. Defendants regularly seek out and procure consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports Defendants sell to third parties for a profit.

19. The diligence Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in Defendants' subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

20. Defendants' unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

21. Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files.

22. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models) to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the Defendants' reports.

23. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

24. The information reported by Defendants contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in the Defendants' consumer reports.

25. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

26. "Payment history" refers to whether a consumer has paid his or his bills in the past, and whether these payments have been timely, late, or missed.

27. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist.

28. The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

29. However, after a delinquent account has been remedied, a consumer's FICO score may increase so long as the account stays current.

30. Defendants voluntarily obtained Plaintiff's consumer bankruptcy information and reported it in individual account tradelines and the Public Records section of Plaintiff's consumer reports.

31. Defendants are well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

32. Additionally, in or around 2009, Defendants implemented their own automated software "bankruptcy scrub" following the settlement agreement in *White v. Experian Info. Sols.*, No. SACV 05-1070 DOC (MLGx), (C.D. Cal. 2008).

33. The *White* settlement makes clear that the CRAs know or should know that pre-petition, unsecured consumer debts are typically discharged in Chapter 7 proceedings. *Benjamin v. Experian Info. Solutions*, 561 F. Supp. 3d 1330, 1340 (citing *Morris v. Experian Info. Sols.*, 478 F. Supp. 3d at 769).

34. Defendants' bankruptcy scrub software identifies pre-petition accounts and makes assumptions about which accounts were discharged through the Chapter 7 bankruptcy, even when the furnisher does not update the accounts as discharged.

35. In other words, Defendants' automated bankruptcy scrubs assume Defendants' notice of a Chapter 7 discharge is in fact notice that a consumer's pre-

petition accounts may be reporting inaccurately, and Defendants will overwrite data reported by a furnisher according to its assumptions and algorithms.

36. However, Defendants have intentionally chosen to disregard knowingly inaccurate open balance and payment obligations of certain types of pre-bankruptcy accounts in Defendants' software programming of its automated "bankruptcy scrub" that they have been employing for well over a decade.

37. Defendants are also aware of the effect of a reaffirmation agreement, which allows a consumer to remain liable for the debt and excludes the debt from the bankruptcy discharge.

38. Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Defendants obtain the bankruptcy case information.

39. Additionally, the Defendants receive actual notice of reaffirmation agreements from furnishers of account/tradeline information.

40. Although Defendants were notified of their inaccurate reporting and had the information necessary to correctly report Plaintiff's account, Defendants failed to verify the information.

41. Instead, Defendants followed unreasonable procedures that allowed them to blindly rely on the furnishers' deficient investigation and report its results, despite possessing conflicting information about Plaintiff's accounts.

42. Rather than following reasonable procedures to assure maximum possible accuracy, Defendants inaccurately report information regarding pre-bankruptcy debts even if that information ignores or contradicts information known and reported by the CRAs themselves.

43. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for their inaccurate reporting following a consumer bankruptcy.

44. Therefore, Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, including those that result in inaccurate account and payment statuses, both before and after receiving a dispute from the consumer.

*Allegations Specific to the Credit Reporting of Plaintiff*

45. Plaintiff filed for a "no asset" Chapter 7 Bankruptcy on or about January 8, 2025, in the United States Bankruptcy Court for the District of Hawaii, petition no. 25-00016.

46. Plaintiff received an Order of Discharge on or about April 16, 2025.

47. Thereafter, Plaintiff was not personally liable for her dischargeable debts and these debts have a $0 balance after the bankruptcy discharge.

48. Defendants prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

49. Defendants reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the date of the last status update.

50. Defendants failed to report Plaintiff's consumer bankruptcy information in the Public Records section and/or in one or more individual tradelines of Plaintiff's consumer reports.

51. Upon information and belief, Defendants received notice of Plaintiff's bankruptcy discharge through their independent collection of Plaintiff's consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

52. Defendants also obtain information from other CRAs (who commonly share information).

53. Defendants are aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

54. Defendants should have reported Plaintiff's bankruptcy filing and discharge information in the public records section of Plaintiff's consumer reports.

55. Defendants should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, *and* with zero-dollar balances.

56. Rather than accurately report the discharged debts, Defendants reported Plaintiff's accounts with numerous inaccuracies.

*Inaccuracies in Plaintiff's Consumer Report*

57. On or about August 25, 2025, Plaintiff obtained a copy of her Experian credit report.

58. On or about November 4, 2025, Plaintiff obtained a copy of her Equifax credit report.

59. Upon review of her Experian and Equifax credit reports, Plaintiff observed several inaccuracies.

60. As a preliminary matter, Defendants did not indicate that Plaintiff had filed for bankruptcy and received a discharge.

61. The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on her Experian and Equifax consumer reports.

62. Defendants failed to report Plaintiff's bankruptcy discharge even though Defendants had all the correct personal information for Plaintiff in their database which matched the personal information reported in Plaintiff's Chapter 7 petition (e.g., full name, social security number, address).

63. Notably, non-party Trans Union accurately reported Plaintiff's public record bankruptcy filing and discharge based on the same information.

64. Additionally, furnishers reported the Plaintiff's discharged/zero account balances, bankruptcy and discharge information to Defendants.

65. Defendants knew or should have known that Plaintiff's bankruptcy was discharged.

66. Defendants reported debts that were in fact discharged in bankruptcy and was therefore required to report these as discharged *and* with zero-dollar balances. However, Defendants' failure to report Plaintiff's bankruptcy – filed in January 2025 and discharged in April 2025 – in Plaintiff's consumer reports contributed to the numerous inaccuracies listed in Plaintiff's consumer report.

67. Upon information and belief, the following furnishers of information accurately reported to Defendants that Plaintiff's accounts were included in Plaintiff's bankruptcy discharge and had a zero-dollar balance after the bankruptcy filing/discharge, but Defendants rejected or revoked the data furnished to it and inaccurately overrode the reporting of the accounts.

68. On Plaintiff's consumer disclosure, Experian inaccurately reported Plaintiff's Aargon Agency account, ending with ******6897 and opened in January 2025 (the "Aargon Account"). The Aargon Account is a collections account collecting on behalf of original creditor The Queen's Medical Center. The

underlying Queen's Medical Center debt/account was opened in February 2024, which pre-dated Plaintiff's bankruptcy filing, and was included in Plaintiff's bankruptcy petition schedules.

69. The Aargon Account was discharged on or about April 16, 2025. Therefore, the Aargon Account should have been reported as discharged in bankruptcy and with a zero-dollar balance.

70. However, Experian inaccurately reported the Aargon Account with a status of "Collection account. $727 past due as of Aug 2025," and with a balance of $727.

71. Additionally, Experian inaccurately reported Plaintiff's Capital One account, starting with 5178************ and opened in March 2017 (the "Capital One Account"), which pre-dated Plaintiff's bankruptcy filing.

72. The Capital One Account was discharged on or about April 16, 2025. Therefore, the Capital One Account should have been reported as discharged in bankruptcy.

73. However, Experian reported the Capital One Account with a status of "Account charged off. $554 written off."

74. Additionally, Experian inaccurately reported Plaintiff's First Hawaiian Bank auto loan account, starting with 7131************ and opened in August 2018 (the "FHB Account"), which pre-dated Plaintiff's bankruptcy filing.

75. Plaintiff continued to make timely payments on the FHB Account throughout her bankruptcy proceedings and following her discharge. Therefore, the FHB Account should be reported with the account's actual payment history.

76. However, Experian reported the FHB Account with a status of "Account charged off. $4,981 written off. $4,439 past due as of Jan 2025," and with a balance of $4,439.

77. Additionally, Experian inaccurately reported Plaintiff's Moneylion Inc. account, starting with LLI4******** and opened in June 2024 (the "Moneylion Account"), which pre-dated Plaintiff's bankruptcy filing.

78. The Moneylion Account was discharged on or about April 16, 2025. Therefore, the Moneylion Account should have been reported as discharged in bankruptcy and with a zero-dollar balance.

79. However, Experian reported the Moneylion Account with a status of "Account charged off. $257 written off. $184 past due as of May 2025," and with a balance of $257.

80. Similarly, Equifax also inaccurately reported the Capital One Account without any indication that the account was discharged in bankruptcy or had a zero-dollar balance, instead reporting the account with narrative code 067 – Charged Off Account.

81. Equifax additionally inaccurately reported Plaintiff's FHB Account with the account's actual positive payment history, instead reporting the account with narrative codes 067 – Charged Off Account, and 174 – Amount in High Credit is Original Charge-Off Amount. Equifax additionally reported the FHB Account with a "Charge Off Amount" of $4,981.

82. The status of "Charge Off" in the consumer credit industry means that a debt may still be owed, especially where, as here, the tradelines do not include bankruptcy coding such as included in and/or discharged in bankruptcy, or the tradeline indicates there is a balance and/or past due balance owed on the account before or after the "charge-off."

83. The national consumer reporting agencies specifically acknowledge that a "charge-off" generally means consumers are still legally responsible for paying the debt.

84. According to Defendants, a charge-off means the lender has written the account off as a loss and the account is closed to future charges. The timeframe is generally between 120 and 180 days after a consumer becomes delinquent, and a charge-off does not mean that the consumer no longer owes the debt; the consumer is still legally obligated to pay the debt.

85. Upon information and belief, Lexis-Nexis furnished information to all three CRAs, including Defendants, that indicated Plaintiff had filed for bankruptcy

and received a discharge, but Defendants rejected or otherwise failed to report the data it received.

86. Upon information and belief, some or all of the data furnishers of the foregoing tradelines provided information to all three CRAs, including Defendants, that indicated their corresponding accounts had been discharged in bankruptcy, but Defendants rejected or otherwise overrode the data it received.

87. In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge are readily available to Defendants through multiple sources such as PACER, but Defendants failed to review those sources or knowingly rejected them.

88. In any event, Defendants knew or had reason to know that they reported information contradicted by notices received from third parties.

89. Defendants inaccurately reported that Plaintiff owed money that she did not actually owe, and also reported inaccurate account statuses and payment histories.

90. Defendants inaccurately reported accounts with balances owed after they were discharged in Chapter 7 Bankruptcy.

91. Defendants failed to indicate that the Accounts were discharged in Chapter 7 Bankruptcy with zero-dollar balances.

92. Notably, Trans Union, the other national CRA, reported Plaintiff's Accounts accurately on consumer reports produced after Plaintiff's discharge.

93. Defendants' reporting of the Accounts is patently inaccurate.

94. If not patently inaccurate, Defendants' reporting of the Accounts is materially misleading.

*Plaintiff's Disputes*

95. On or about November 5, 2025, Plaintiff mailed a letter to Equifax and another to Experian disputing their inaccurate reporting of Plaintiff's bankruptcy discharge and credit information.

96. The letters each specifically advised that Plaintiff had filed for Chapter 7 bankruptcy in January 2025 and received a discharge in April 2025 and included Plaintiff's full bankruptcy case number, social security number, date of birth, home address, name, and phone number.

97. The letter to Experian further specifically identified the FHB Account, Moneylion Account, Queen's Health/Aargon Account and Capital One Account as having been discharged in Plaintiff's bankruptcy.

98. Upon information and belief, Defendants each received Plaintiff's dispute letter.

99. On or about November 27, 2025. Experian responded to Plaintiff's dispute. However, instead of correcting its reporting, Experian continued to: 1) fail to report Plaintiff's bankruptcy case/discharge; 2) inaccurately report the FHB

Account; 3) inaccurately report the Moneylion Account; and 4) inaccurately report the Capital One Account.

100. Equifax did not respond to Plaintiff's dispute.

101. On or about January 5, 2026, Plaintiff obtained a new copy of her credit report from Equifax.

102. Upon review of her credit report, Plaintiff observed that Equifax was still: 1) not reporting Plaintiff's bankruptcy; 2) continuing to inaccurately report the Capital One Account; and 3) continuing to inaccurately report the FHB Account.

103. Defendants did not investigate Plaintiff's disputes, pursuant to their unreasonable procedures, despite possessing information indicating the above-referenced accounts were included in/discharged in Plaintiff's bankruptcy and/or the ability to independently verify that the accounts were included in/discharged through the same sources they receive consumer bankruptcy information.

104. Rather than perform a reasonable investigation based on Plaintiff's dispute, readily available public records, and information known by Defendants through Plaintiff's reported payment history on the accounts, Defendants continued to report the accounts inaccurately despite awareness that the information was factually inaccurate and conflicted with information known by the CRAs.

*Plaintiff's Damages*

105. Upon information and belief, had Defendants accurately reported the Accounts with correct payment histories and statuses, Plaintiff's credit scores would have been better.

106. After Plaintiff's bankruptcy discharge, in or around March 2026, Plaintiff applied for credit with Capital One and was approved, but at higher rates and worse overall terms due to Defendants' inaccurate reporting.

107. Defendants' inaccurate reporting of the accounts, along with additional information belonging to Plaintiff, was published to a potential creditor by Defendants.

108. As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm, including, but not limited to, denial of credit.

109. As a result of Defendants' conduct, Plaintiff wasted her time, money, and labor by writing and mailing disputes.

110. As a direct result of Defendants' inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred, related to Defendants' inaccurate reporting

111. Plaintiff also suffered economic damages in the form of attorneys' fees incurred for a necessary review of her credit reports.

112. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational damage, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

113. Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

## CLAIMS FOR RELIEF

### COUNT I

### U.S.C. § 1681e(b)

### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

114. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

115. The FCRA requires CRAs, like Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

116. Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information pertaining to pre-bankruptcy debts after the consumer, Plaintiff, received a Discharge Order.

117. Defendants know or should have known that the effect of a Discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding. Defendants know or should have known of their obligations under the FCRA, especially pertaining to reporting discharged debt.

118. These obligations are well established by the plain language of the FCRA, as promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures concerning the reporting of discharged debts.

119. Additionally, Defendants possess or can easily obtain substantial written materials that detail CRA's duties and obligations under the FCRA, including those that apply when consumers file for Chapter 7 Bankruptcy.

120. Despite knowledge of these legal obligations, Defendants willfully and consciously breached their known duties and deprived Plaintiff of her rights under the FCRA.

121. Defendants know that discharged debts should not be reported as charged off, late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

122. In this case, Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the consumer report it sells to other parties for a profit.

123. Defendants received notice of Plaintiff's bankruptcy and discharge through public records, independent collection of consumer information directly obtained by Defendants through sources of consumer information such as Lexis-Nexis, Defendants' own files, and information provided by data furnishers, yet Defendants rejected the information.

124. Specifically, Defendants knew or should have known about Plaintiff's bankruptcy filing and discharge and failed to include that information in Plaintiff's consumer disclosure and in consumer reports published to third parties.

125. When Defendants received notice of Plaintiff's bankruptcy information, they had an obligation to ensure they reported Plaintiff's discharge and its effects with maximal accuracy.

126. Defendants received notice of Plaintiff's bankruptcy discharge through public records, their own files, and information provided by data furnishers, yet Defendants failed to report Plaintiff's bankruptcy information.

127. As a result, Defendants failed to report Plaintiff's bankruptcy information, and reported the accounts with statuses other than "discharged in bankruptcy," and/or with balances, instead of zero-dollar balances.

128. Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

129. Alternatively, Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

130. Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

131. Plaintiff suffers actual damages, including the above-referenced economic damages, a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendants inaccurately reporting debts that were discharged in bankruptcy, and otherwise failing to report that the debts were discharged in bankruptcy.

132. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

133. Defendants are each a direct and proximate cause of Plaintiff's damages.

134. Defendants are each a substantial factor in Plaintiff's damages.

135. Therefore, Defendants are liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq*.

//

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**

136. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

137. When a consumer disputes the accuracy or completeness of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information or delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

138. When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

139. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

140. Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Defendants also violated the FCRA by

failing to perform a reasonable reinvestigation of the disputed accounts even after Plaintiff notified them of the inaccurate information in Plaintiff's credit file.

141. Defendants' violations of 15 U.S.C. § 1681i include, but are not limited to the following:

i. Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

ii. Failing to consider all relevant information while investigating Plaintiff's dispute.

iii. Failing to include all relevant information when notifying furnishers of Plaintiff's dispute.

142. Instead of reasonably reinvestigating Plaintiff's dispute, Defendants continued to report Plaintiff's accounts and public record information inaccurately after Plaintiff's bankruptcy discharge.

143. Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

144. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendants inaccurately reporting a balance for a debt that was discharged in bankruptcy, and/or otherwise failing to report that the debt was discharged in bankruptcy.

145. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

146. Defendants are each a direct and proximate cause of Plaintiff's damages.

147. Defendants are each a substantial factor in Plaintiff's damages.

148. Defendants' acts, as described above, were done willfully and knowingly; or, alternatively were committed negligently.

149. Therefore, Defendants are liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681e(b);

ii. Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681i;

iii. An award of actual, statutory, and punitive damages as provided by the FCRA;

iv. Awarding costs and reasonable attorneys' fees pursuant to FCRA 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

v. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

RESPECTFULLY SUBMITTED on June 26, 2026

*/s/Blake Goodman*
Blake Goodman (SBN: 7436)
LAW OFFICES OF
BLAKE GOODMAN, PC
900 Fort Street Mall, #910
Honolulu, HI 96813
E: blake@debtfreehawaii.com
T: (808) 528-4274